UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

LANCE R. BISHOP, SR.,

                            Plaintiff,

    v.                                                     9:25-CV-0595
                                                                    (MAD/ML)

DANIEL F. MARTUSCELLO, III, et al.,

                            Defendants.
_____

APPEARANCES:

LANCE R. BISHOP, SR.
Plaintiff, pro se
09-B-1765
Upstate Correctional Facility
P.O. Box 2001
Malone, NY 12953


MAE A. D'AGOSTINO
United States District Judge

## DECISION and ORDER

**I.    INTRODUCTION**

       Plaintiff Lance R. Bishop, Sr. commenced this action by filing a pro se civil rights complaint pursuant to 42 U.S.C. § 1983 ("Section 1983"), together with an application to proceed in forma pauperis ("IFP"). Dkt. No. 1 ("Compl."); Dkt. No. 2 ("IFP Application"). By Decision and Order entered on June 13, 2025, the Court granted plaintiff's IFP Application, reviewed the complaint in accordance with 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b), and dismissed the pleading without prejudice for failure to state a claim upon which

1

relief may be granted. Dkt. No. 5 ("June 2025 Order"). In light of plaintiff's pro se status, he was afforded an opportunity to submit an amended complaint. *Id*. at 25-27.

Presently before the Court is plaintiff's amended complaint. Dkt. No. 9 ("Am. Compl.").

## II. SUFFICIENCY OF THE AMENDED COMPLAINT

### A. The Complaint and June 2025 Order

In his complaint, plaintiff asserted claims against several officials from Upstate Correctional Facility based on allegations that these officials harassed him, denied him access to law library and tablet privileges, denied him access to medical treatment and programming, and failed to transfer his personal property. *See generally*, Compl.

The complaint was construed to assert the following claims against the named defendants: (1) First Amendment retaliation claims against defendants Austin Martin, Adam Martin, Andrew Martin, and Erica Martin based on these officials depriving plaintiff of property, diet meals, and a back brace following plaintiff's submission of a grievance regarding "violations of the HALT Act"; (2) a First Amendment retaliation claim against defendant A. Martin based on this official denying plaintiff access to programming on one occasion; (3) a First Amendment access-to-courts claim against defendant Boyer; (4) Eighth Amendment medical indifference claims against defendant Witty-Lewis, based on her refusal to provide plaintiff with access to his medically prescribed back brace, and against defendants Martuscello and Chief Medical Officer Moores based on their failure to remedy this wrongdoing; (5) an Eighth Amendment failure-to-protect claim against defendants Uhler and Demers, apparently based on these officials approving the transfer of plaintiff and another inmate with whom he had a negative history to Sing Sing Correctional Facility; and (6) a conspiracy claim against defendants Austin Martin, Adam Martin, Andrew Martin, and

Erica Martin based on these officials denying plaintiff recreation, diet meals, programming, and property. *See* June 2025 Order at 8-9.

After reviewing the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b), the Court dismissed plaintiff's Section 1983 claims without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted. *See* June 2025 Order at 9-27.

**B.    Review of the Amended Complaint**

Because plaintiff is proceeding in forma pauperis and is an inmate suing one or more government employees, his amended complaint must be reviewed in accordance with 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b). The legal standard governing the review of a pleading pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) was discussed at length in the June 2025 Order and it will not be restated in this Decision and Order. *See* June 2025 Order at 2-4.

The amended complaint differs from the original complaint in two respects. First, the amended complaint asserts claims against only defendants Uhler and Boyer. *See* Am. Compl. at 1-2. Second, plaintiff has attached several exhibits to the amended complaint, including copies of grievances and state court records that relate to his access-to-courts claims. *See* Am. Compl. at 9-97. The following facts are set forth as alleged in the amended complaint or indicated in documents attached thereto.

On April 11, 2023, plaintiff "filed a CPL § 440.10(1)(h) motion" in state court wherein he "presented a mixed claim of ineffective assistance of counsel" related to his criminal conviction, which "was non-frivolous." Am. Compl. at 6.

On August 14, 2023, plaintiff arrived at Upstate Correctional Facility.  Am. Compl. at 2.  "[F]or several weeks[,] [plaintiff] requested law library materials such as pen, paper and carbon paper and [a] law library tablet because [he] was in current litigation with other correction officers and [his] CPL § 440.10 motion was in progress[.]"  *Id*. at 2-3.  Plaintiff "also spoke to several correction officers about law library tablet access" and was told by all of them that "the Westlaw system is down."  *Id*. at 3.

On August 21, 2023, plaintiff submitted a grievance regarding "employee harassment" and "the facilities [sic] policy not to provide law library tablets, law library materials, static tablets daily, adequate medical services during intake, program list participation, and property within 72 hrs."  Am. Compl. at 3.  At the time plaintiff filed this grievance, he was aware from other inmates housed in "other buildings" that "law library materials and Westlaw" were available, but limited.  *Id.*

In October 2023, plaintiff "requested [a] law library tablet" from a non-party corrections officer "who was unaware of the law library suppression program in 8 building."  Am. Compl. at 3.  This official "went and got the law library tablets[,]" which "work[ed]."  *Id*.  From that point until "late November, [plaintiff] was able to get [a] law library tablet[,]" but only "every 3 days[,] which went against policy and Directives."  *Id*.

On November 25, 2023, plaintiff "was denied law library tablet [privileges] because [his] rec pen door was open."  Am. Compl. at 4.  Plaintiff "became frustrated because [he] had to wait every 3 days for materials and . . . catch the list at 5:30 am[,]" and "confronted staff about the unwritten policy of allowing materials every 3 days, and now having to close [the] rec pen door[,]" forcing inmates "to choose between recreation . . . and law library materials."

4

*Id*.  Plaintiff was told by a non-party corrections official that "this is how we do it at Upstate[.]" *Id*.  Plaintiff filed a grievance on November 30, 2023.  *Id*.

On January 5, 2024, plaintiff's "CPL § 440.10 motion" was denied.  Am. Compl. at 6.  On January 8, 2024, plaintiff "was put on the draft to transfer out of Upstate to Sing Sing Correctional Facility."  *Id*. at 4.  After entering the bullpen, plaintiff "spat on the wall."  *Id*.  Defendant Corrections Officer Boyer "asked [plaintiff] why [he did] that" and then called him a "scumbag."  *Id*.  Plaintiff cursed at defendant Boyer, who then asked plaintiff for his "name and DIN[,]" which plaintiff provided.  *Id*.  Thereafter, defendant Boyer directed plaintiff to "wipe the walls down" with a rag.  *Id*. at 5.  Plaintiff told defendant Boyer that he "was not wiping nothing" and defendant Boyer "became irate[.]"  *Id*.

Eventually, "[a]ll the other incarcerated individuals were taken to the draft bus" except plaintiff.  Am. Compl. at 5.  Thereafter, "[a]nother sergeant" asked plaintiff to provide his "building and cell location[.]"  *Id*.  In response, plaintiff expressed concern and stated, "don't play with my property."  *Id*.

When plaintiff was subsequently walked to the bus, he "saw all [his] bags still on the car, outside and not on the bus."  Am. Compl. at 5.  Plaintiff informed the escorting officer that he had "important legal work" in his bags and asked that officials not "play with [his] property."  *Id*.  The officer told plaintiff not to worry.  *Id*.

On January 11, 2024, plaintiff arrived at Sing Sing Correctional Facility.  Am. Compl. at 5.  None of plaintiff's property arrived with him.  *Id*.  On or about January 18, 2024, plaintiff received a copy of the state court decision denying his "CPL § 440.10 motion."  *Id*.  On January 31, 2024, plaintiff filed a grievance regarding his missing property.  *Id*.

5

Plaintiff subsequently "missed the [30-day] deadline" to appeal the denial of his "CPL § 440.10 motion" because he "drafted out that same day" and "was unaware" of his ability to request an extension. Am. Compl. at 6. On February 28, 2024, plaintiff filed an "application" in state court "pursuant to CPL § 450.15(1)[,]" which "was also denied." *Id*.

Plaintiff believes that defendant Uhler "created and . . . allow[ed] an unconstitutional policy and custom" within Upstate Correctional Facility whereby inmates would "not have access to law library materials and recreation" but rather would have to "choose" between the two. Am. Compl. at 6. According to plaintiff, defendant Uhler "failed to remedy [this] wrong" after being notified about it. *Id*.

Plaintiff also believes that the withholding of his personal property by defendant Boyer prevented him from timely appealing the denial of his "CPL § 440.10 motion," and his lack of access to law library materials prevented him from knowing about his ability to file a request for an extension of his deadline to appeal that ruling. Am. Compl. at 7.

The Court liberally construes the allegations in the amended complaint to assert a First Amendment retaliation claim against defendant Boyer and First Amendment access-to-courts claims against defendants Boyer and Uhler.

Plaintiff seeks money damages. Am. Compl. at 8. For a more complete statement of plaintiff's claims, reference is made to the amended complaint.

    **C.**    **Analysis**

        **1. Retaliation Claim**

The legal standard governing First Amendment retaliation claims was discussed at length in the June 2025 Order and will not be restated herein. *See* June 2025 Order at 10-14.

Liberally construed, the amended complaint alleges that defendant Boyer played a role in preventing plaintiff's property from being transferred with him to Sing Sing Correctional Facility following a verbal dispute.[1]

As an initial matter, by plaintiff's own allegations, he spoke with two different officials, both more senior than defendant Boyer, regarding the transfer of his property after his negative exchange with defendant Boyer, including immediately before he was placed on the transport bus, and one of those officials told plaintiff not to "worry" about his property being transferred with him.  See Am. Compl. at 4-5.  Thus, it is not even clear from the allegations in the amended complaint that defendant Boyer was personally involved in preventing plaintiff's property from being transported with him.  See, e.g., Raspardo v. Carlone, 770 F.3d 97, 116 (2d Cir. 2014) (explaining, in the context of supervisory liability under Section 1983, that an official's actions must be "the proximate cause of the plaintiff's constitutional deprivation"); Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 696 (1978) (interpreting the language in Section 1983 to mean that "Congress did not intend § 1983 liability to attach where such causation [is] absent."); City of Oklahoma City v. Tuttle, 471 U.S. 808, 833 (1985) ("Ordinary principles of causation used throughout the law of torts recognize that 'but for' causation, while probably a necessary condition for liability, is never a sufficient condition of liability.").

Furthermore, even assuming that defendant Boyer was personally involved in this alleged wrongdoing, the Court has no basis to plausibly infer from the allegations in the amended complaint that plaintiff's verbal exchange with defendant Boyer immediately after

---

[1] The amended complaint is devoid of allegations which plausibly suggest that plaintiff had any negative encounters with defendant Boyer prior to January 8, 2024, or that this official was aware of, let alone motivated by, plaintiff's engagement in protected activity before this date.

plaintiff spit on a wall, which included plaintiff cursing at this official, satisfies the first element of a retaliation claim. *See, e.g., Coleman v. Racette*, No. 9:18-CV-0390 (MAD/CFH), 2021 WL 4312392, at *10 (N.D.N.Y. May 27, 2021) ("A prisoner does not have a First Amendment right to engage officers in a verbal dispute."), *report and recommendation adopted by* 2021 WL 3508342 (N.D.N.Y. Aug. 10, 2021); *Velleca v. Pangburn*, No. 9:20-CV-0887 (BKS/DJS), 2020 WL 12933756, at *7 (N.D.N.Y. Sept. 2, 2020) ("To the extent that Plaintiff relies upon his verbal dispute with Pangburn as protected conduct or speech, that claim fails."); *Cosby v. McDonald*, No. 20-CV-432, 2020 WL 5026550, at *6 (D. Conn. Aug. 25, 2020) (finding that there is a distinction between "verbal grievances and verbal confrontations or arguments between a prisoner and a correctional officer and [district courts] have concluded that the latter do not constitute protected speech") (collecting cases); *Smith v. Miller*, No. 15-CV-9561, 2017 WL 4838322, at *7 n.3 (S.D.N.Y. Oct. 23, 2017) ("Verbal confrontations—like the 'verbal dispute' between Plaintiff and Defendant Allen, in which Plaintiff was not asserting nor protecting any discernible right—do not constitute protected activity and cannot act as the basis for a retaliation claim."); *Ford v. Martuscello*, No. 9:14-CV-1566 (DNH/DEP), 2016 WL 5322166, at *4 (N.D.N.Y. June 23, 2016) (confronting a corrections officer based on a dissatisfaction with that officer's directive is one example of speech that is not constitutionally-protected activity), *report and recommendation adopted by* 2016 WL 5256901 (N.D.N.Y. Sept. 22, 2016) (citations omitted); *Williams v. Smith*, No. 11-CV-0601 (LEK/TWD), 2015 WL 1179339, at *10 (N.D.N.Y. Mar. 13, 2015) (verbal complaint "about problems with [inmate's] braces" was not protected conduct); *Carl v. Griffin*, No. 08-CV-4981, 2011 WL 723553, at *5 (S.D.N.Y. Mar. 2, 2011) ("[The p]laintiff's brief and isolated verbal [encounter with the defendant] does not constitute protected First Amendment speech [because] [t]o construe it

as such would elevate every verbal exchange between a prison employee and a prisoner to the level of protected speech under the First Amendment.") (internal quotation marks and citation omitted); *Lugo v. Van Orden*, No. 07-CV-879 (TJM/GJD), 2008 WL 2884925, at *3 n.4 (N.D.N.Y. July 23, 2008) ("A simple discussion with a corrections officer would not be protected speech unless that discussion was in the form of a complaint or concern about the officer or some policy involved.").

Accordingly, plaintiff's retaliation claim against defendant Boyer is dismissed without prejudice pursuant to 28 U.S.C. 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

### 2. Access-to-Courts Claims

The legal standard governing First Amendment access-to-courts claims was discussed at length in the June 2025 Order and will not be restated herein. *See* June 2025 Order at 14-16. For the sake of clarity, the Court will add only that inmates do not have a "constitutional right of access to a law library per se[.]" *Odom v. Keane*, No. 95-CV-6377, 1998 WL 720671, at *2 (S.D.N.Y. Oct. 13, 1998) (citing *Lewis v. Casey*, 518 U.S. 343, 351 (1996)). Rather, "[a]n inmate has a constitutional right of reasonable access to the courts, and where the use of a prison law library is necessary to that right, an inmate may be able to bring an action because he has been denied adequate library access." *Id*. (citing *Bounds v. Smith*, 430 U.S. 817, 821 (1977)); *see also Pearson v. City of New York*, No. 22-CV-10669, 2024 WL 1314099, at *18 (S.D.N.Y. Mar. 26, 2024) (dismissing access-to-courts claim where the pleading "fail[ed] to allege when and/or how frequently [the plaintiff] was denied access to the law library, let alone how the denial of law library access hindered his efforts to pursue legal

challenges in his criminal case or interfered with his access to the courts"), *appeal dismissed*, No. 24-1167, 2024 WL 5679217 (2d Cir. Sept. 18, 2024).

Liberally construed, the amended complaint alleges that defendant Uhler prevented plaintiff from accessing legal materials and conducting legal research during his incarceration at Upstate Correctional Facility, which he needed to prosecute ongoing court matters, and defendant Boyer played a role in preventing plaintiff's property from being transferred with him to Sing Sing Correctional Facility, which he needed to properly appeal the denial of his "CPL § 440.10 motion."[2]

As an initial matter, plaintiff acknowledges that he received a copy of the state court decision denying his "CPL § 440.10 motion" on or about January 18, 2024, while he was housed at Sing Sing Correctional Facility. Am. Compl. at 5. Plaintiff also acknowledges that the 30-day deadline to file an appeal of that ruling did not expire until more than two weeks later – while he remained incarcerated at Sing Sing Correctional Facility – and that he could have sought an extension of his appeal deadline. *Id*. at 6. In other words, the Court has no basis to plausibly infer from the allegations in the amended complaint that the alleged law library deprivations at Upstate Correctional Facility had any impact on plaintiff's knowledge of his appeal deadline, or ability to file an appeal. Moreover, the amended complaint does not include any allegations explaining why plaintiff needed access to his personal property to notify the state court of his desire to appeal the ruling on his "CPL § 440.10 motion," or extend his deadline to do so. Thus, the Court has no basis to plausibly infer that defendants

---

[2] The amended complaint does not identify any specific action, other than plaintiff's state court action involving his "CPL § 440.10 motion," that plaintiff was unable to prosecute or pursue as a result of this alleged wrongdoing.

Boyer and Uhler were personally involved in plaintiff's alleged inability to pursue an appeal of the ruling on his "CPL § 440.10 motion."

Furthermore, and setting aside issues of personal involvement, plaintiff conclusorily alleges only that his *motion* was "non-frivolous." Am. Compl. at 6. The pleading does not, however, include any details regarding the arguments plaintiff would have raised on appeal, or how the state court erred in its ruling such that the *appeal* of the state court order denying the motion would have been "non-frivolous."[3] Thus, plaintiff has also failed to adequately allege that he suffered an "actual injury" as a result of the state court order denying his request to appeal the order regarding his "CPL § 440.10 motion."

Accordingly, and for the reasons set forth in the June 2025 Order, plaintiff's access-to-courts claims are dismissed without prejudice pursuant to 28 U.S.C. 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

## III.     CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that this action alleging federal claims under Section 1983 is **DISMISSED** without prejudice and without further leave to amend in this action pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted. The Clerk is directed to terminate the defendants and close this case; and it is further

---

[3] The state court order denying plaintiff's "CPL § 440.10 motion" found that the motion was both procedurally barred and precluded by plaintiff's guilty plea. *See* Am. Compl. at 35. The amended complaint does not even attempt to address these findings, let alone explain why they were likely to be reversed on appeal.

**ORDERED** that the Clerk serve a copy of this Decision and Order on plaintiff.

**IT IS SO ORDERED**.

Dated: September 5, 2025
       Albany, NY

_____
Mae A. D'Agostino
U.S. District Judge